(No. 76-785—

Herschel Sunley, Claimant, *vs.* State of Illinois, Respondent.

*Opinion filed April 12, 1976.*

HERSCHEL SUNLEY, Pro se.

WILLIAM J. SCOTT, Attorney General; WILLIAM E. WEBBER, Assistant Attorney General, for Respondent.

PERLIN, C. J.

This is an action to recover the sum of $25,596.63 for labor and materials furnished by Claimant in the construction of toilet facilities for disabled individuals attending the 1975 Illinois State Fair. The matter comes before the Court on the joint stipulation of the parties.

That stipulation establishes that Claimant entered into a contract with the Capital Development Board on July 22, 1975, under which he agreed to supply labor and materials to renovate the Illinois Building at the Illinois State Fairgrounds to make the building accessible to handicapped persons prior to the start of the State Fair on August 8, 1975. The contract price for the work was $24,265.00, which was raised to $25,569.63 as a result of two subsequent change orders.

The funds for the project were to come from a FY-75 appropriation account entitled, "Improvements for the Handicapped." The appropriation was contained in a bill which became law on or about May 26, 1975, appropriating to the State Fair Agency the sum of $60,000 from the Agricultural Premium Fund for the purpose of making the State Fairgrounds accessible to handicapped persons. A portion of the FY-75 appropriation was expended on work at the Fairgrounds, but the balance of the appropriation had lapsed prior to the award of the instant contract to Claimant. At the time the contract was awarded to Claimant, the Capital Development

Board was unaware that there had not been a reappropriation of the unobligated portion of the original appropriation for improvements for the handicapped at the fair.

The stipulation before the Court further establishes that Claimant fully performed his obligations under his contract with the State, and that the State was more than satisfied with the quality of his work.

The State does not contest an award to Claimant but questions whether an award can be made where work is performed under a contract entered into after the lapse of the applicable appropriation.

In *Illinois Belli & Belli Company v. State, 31 Ill.Ct.Cl. 129,* this Court said:

> The doctrine that a contract will be implied by law to pay for labor, services or materials furnished one person by another is inapplicable as against the State, but where there is no violation of positive law involved, an award against the State may be made for labor, services or materials furnished and beneficial to it.

This is not an instance where a State agency has expended funds in excess of an appropriation. Here there had been an appropriation for this specific project which, through no fault of Claimant, had lapsed before the contract was let for bidding, and which by oversight of the State had not been reappropriated for FY-76. It is therefore clear that it was the intent of the legislature to appropriate funds for the services performed by Claimant and under these circumstances an award for labor, services and materials furnished by Claimant to the State is proper.

Claimant is accordingly awarded the sum of Twenty-Five Thousand Five Hundred Ninety-Six And 63/100 Dollars ($25,596.63).

SUPPLEMENTAL OPINION

Respondent has moved for reconsideration of the

Court's decision in this action, wherein we awarded Claimant the sum of $25,596.63 for work performed at the Illinois State Fair to make the Illinois Building accessible to handicapped persons. Respondent expresses great concern that our opinion departs from long and firmly established precedents of this Court and may be interpreted by some as precedent for recognition of a claim against the State based either upon *quantum meruit,* implied contract or good conscience.

The Court wishes to make clear that its opinion herein stands for no such proposition, nor does this Court intend to, and in fact does not, establish a precedent whereby a void contract, entered into after the lapsing of an appropriation, would be recognized by this Court.

Rather the Court's award in this cause is based upon the specific and somewhat unique factual situation with which we are presented. It was established by stipulation that the Capital Development Board entered into a contract with Claimant on July 22, 1975, under which Claimant was to supply labor and materials to renovate the Illinois Building at the Illinois State Fairgrounds to make the building accessible to handicapped persons prior to the start of the fair on August 8, 1975.

The funds for the project were to come from an FY-75 appropriation entitled, "Improvements for the Handicapped." The appropriation was contained in a bill which became law on or about May 26, 1975, which appropriated the sum of $60,000 from the Agricultural Premium Fund for the purpose of making the State Fairgrounds accessible to the handicapped. A portion of the FY-75 appropriation was expended on work at the Fairgrounds, but the balance, which was in excess of the amount of this claim, lapsed prior to the award of the contract to Claimant.

As we noted in our opinion, this was thus not an instance where a State agency expended funds in excess of an appropriation. There had been an appropriation for the specific project for which Claimant seeks compensation, but that appropriation lapsed before the contract was let by bidding and, by oversight of the State, had not been reappropriated for FY-76.

Our opinion further rested upon the fact that the contract with Claimant was for improvement of facilities to make them usable by handicapped persons. The Facilities for the Handicapped Act, *Ill.Rev.Stat., Ch.* they are usable by handicapped persons.

Public buildings which lack facilities for handicapped persons (a) create a substantial risk of death or injury with respect to handicapped persons and others both in normal conditions and in the event of fire, panic or other emergency and (b) impair the full enjoyment of public buildings by handicapped persons. Therefore, facilities for the handicapped persons in public buildings are an object of serious public concern.

It is thus the announced public policy of the State of Illinois to promote the modification of public facilities so they are usable by handicapped persons.

We further note that the Purchasing Act, *Ill.Rev.Stat., Ch. 127, §166* states:

No officer, institution, department or board or commission shall contract any indebtedness on behalf of the State, nor assume to bind the State in an amount in excess of the money appropriated, unless expressly authorized by law.

We think that the expressed public policy of the State, as set forth in the Facilities for the Handicapped Act as quoted above, brings the Claimant's contract within the foregoing exception to the Purchasing Act.

This concept is not new. It was first expressed by the Illinois Supreme Court in the case of *Fergus v. Brady, 277 Ill. 27* where the Court stated:

And by the plain language of the constitution every claim or contract is utterly void if not within the amount of appropriations already made, unless there is express authority of law for the creation of the debt or claim or the

making of the contract. In Section 19 claims under any agreement or contract made by express authority of law are excepted, and if there is some particular and specific thing which an officer, board or agency of the State is required to do, the performance of the duty is expressly authorized by law.

Although the Constitution of 1870, to which the case of *Fergus v. Brady* refers, has been since replaced by the Constitution of 1970, Ch. 127, §166, as set out above, was passed by the Legislature in recognition of the constitutional exception and has not been repealed. It therefore follows that the Legislature still recognizes the desirability and validity of the exception.

In sum, our decision rests upon our perception that it was the clear and unmistakable intent of the Legislature that the public buildings at the Illinois State Fairgrounds be renovated to facilitate the handicapped in accordance with their announced public policy, and therefore, that a contract for that purpose be let, and that payment be made for the work so performed; such payment being authorized, if need be, by the exception contained in the Purchasing Act which permits expenditure of moneys in excess of an appropriation where the expenditure is "expressly authorized by law." This opinion does not rest upon considerations of implied contract, *quantum meruit* or good conscience and should not be so interpreted.